Please be seated. The clerk will call the case, please. 323-0016, Breanne Jamison, a comment by Romy Kwan v. Christopher Sweeney, appellee by file form and warrant. Thank you, Mr. Kwan. Good afternoon. Good afternoon, Your Honors, and may it please the court. My name is Logan Kwan, and I represent Bre Jamison, plaintiff and appellant. Bre was 13 years old in 2007-2008 when she was sexually molested by her stepfather, Christopher Sweeney, the defendant. Since then, this case has seen extensive motion practice over contested evidentiary issues and the overview of five separate judges. Judge O'Shea, Judge McKillop, Judge French-Mallin, Judge Chapman, and finally, Judge Cerny. The first trial ended in a mistrial in 2019. Based on Judge French-Mallin's determination, the Defendant's Counsel made a statement, quote, so highly prejudicial to the jury and in violation of the judge's order in limine that her only option was to mistry the case. After delays due to COVID, this matter was rescheduled. The second trial took place in January under Judge Cerny, despite Bre's timely motion for substitution of judge without cause. After a trial marked by the arbitrary disregard for previous evidentiary orders and other challenges, the jury found for Mr. Sweeney on the first two counts, Judge Cerny found for Mr. Sweeney on the third statutory count. Bre, a molested child, now appeals on six separate grounds. Individually, each is sufficient on its own to grant a request for a new trial. In the aggregate, they paint a compelling portrait of justice demanded and denied for Bre. Most importantly, Your Honors, the trial court erred by failing to grant plaintiffs routine motion for substitution of judge as of right. Section 1001A2 of the Illinois Code of Civil Procedure, in its plain language, states that if a party timely exercises her right to a substitution without cause, it shall be granted if presented before trial review begins and before the judge to whom it is presented has ruled on any substantial issues. The Illinois Supreme Court in Palos Community Hospital v. Humana reaffirmed this plain language reading of the statute. Provided the motion was made before trial or hearing and before the judge has ruled on any substantial issues, it is timely. When made properly, this right is absolute. The trial court has no discretion to deny it. And when the court improperly denies this motion, any orders given after this are annulled. Here, Bre met both of these standards. On December 6th, Bre filed a motion for status hearing and assignment of judge over a month before trial. The same day, she received an administrative reassignment notice. The notice stated your case has been reassigned to a new court location for all further proceedings, stating the trial be held in courtroom 2016. No judge was named. This notice also listed the wrong date for trial. December 12th, she received another corrected notice. Bre received no other correspondence from the court clarifying which judge would preside over the case. The court chose not to hear plaintiff's motion for status hearing and assignment of the judge until the morning of December 20th. At the hearing on December 20th, Judge Cerny presided. Plaintiff's counsel stated that Bre was ready for trial on January 9th, then the same day filed a motion for substitution of judge without cause. The court then chose not to hear plaintiff's motion for substitution of judge until 16 days later at the pretrial conference on January 5th, four days before the trial. On January 5th, Bre promptly raised her motion for substitution before Judge Cerny ruled on any substantial issues. At this point, Bre should have been assigned another judge pursuant to this routine motion. The motion for substitution was made before trial or hearing, and the trial court had not ruled on any substantial issues. Per the plain statutory language of 1001A2, Bre's motion was timely. However, at this point, the trial court then misapplied the court's precedent in Payless Hospital. The judge stated, on the record, my recollection is it was in the statute that it says it has to be timely. Timeliness means it would cause a delay. On this basis, Judge Cerny then denied Bre's motion. To preserve this issue, plaintiff then filed a motion to reconsider. This was denied as well. Here, the trial court erroneously concluded that the motion for substitution was not timely. He improperly applied his own subjective standard of timeliness instead of the objective standard set forth by the Illinois legislature when they drafted Rule 1001. It's not for the place that the judge decided the standard for timeliness, where the legislature has already made itself clear on what timely means. And the legislature could have used a different standard when they drafted Rule 1001. In fact, they did so for the criminal analog. Again, it's a very simple formula. Before trial or hearing and before a substantial ruling, it's timely and there's no discretion to deny. As the Payless court said, because the legislature has established a statutory right to substitution of judge without cause, so long as certain criteria are met, courts are obligated to uphold that right. When properly made, a motion for substitution of judge of right is absolute, and the circuit court has no discretion to deny the motion. Brie met the standard, and Judge Cerny was obligated to uphold this right. Nor can defendant demonstrate that Brie's routine motion was any sort of delay tactic. She filed her motion 20 days before the trial was scheduled to begin. She answered ready for trial on December 20th and gave the court no indication that she wanted to delay the trial. The record shows no examples of any delay or attempts to delay on the part of plaintiff. Plaintiff had no control over the court scheduling her motion 16 days later. She moved immediately to reconsider when the judge denied her motion on January 5th. Finally, defendant argued that Brie invited error or waived her right to substitution of judge. However, this improperly relies on the now overruled doctrine of testing the waters. This must be ignored. Ultimately, Brie only needed to meet the statutory standards set forth in the plain language of Section 1001. She did so, and the trial court misinterpreted the law by denying her motion. As a result, and as a threshold matter, all orders by the court after December 20th must be vacated and, of course, remanded for further proceedings accordingly. Additionally, the trial court abused its discretion on three significant and interrelated evidentiary issues. First, the court abused its discretion by arbitrarily vacating Order in Limine No. 8 and allowing Mr. Sweeney, defendant, to testify after Brie rested her case that he was not charged with the crime. For reasons unknown to Brie, the DuPage County State's Attorney's Office chose not to bring charges against Mr. Sweeney. This was balanced by another essential fact, that DCFS had indicated finding that Brie was molested by Mr. Sweeney. As opposing counsel, helpfully provided in the supplemental record, at the March 2022 hearing, plaintiff, defendant, and Judge Chapman all preferred Judge Chapman to hear this case. This case had seen hours of hearings, extensive and debated motions in limine, orders in limine, motions to reconsider those orders in limine, where Judge Frenchmalen and then later Judge Chapman worked hard to create a comprehensive set of evidentiary orders that balanced these very complicated issues. Especially the balance between, on one hand, indicated finding, and on the other hand, the fact that Sweeney was not charged. These issues were heavily debated. Again, ultimately, Judge Frenchmalen, and again later Judge Chapman, ruled that the fact Sweeney was not charged was inadmissible, as were the DCFS findings. Neither were admissible. These were the orders in limine coming into trial. Indeed, the 2019 trial resulted in a mistrial because defense counsel elicited information that Sweeney was not charged with the crime. Plaintiff built her case in chief on the understanding that this information would not be admitted to trial. Of course, a court's orders in limine are subject to change at the court's discretion. But where the trial court acts arbitrarily, as it did here, in such a way that prejudices a party or affects the outcome, the trial court has abused its discretion. That's precisely what happened here. Plaintiff's first witness, Emily, Bree's mom, was asked why she called the police. She stated she did so because, quote, she knew what Sweeney had done was a crime. Emily made no further comment or testimony on this issue. She did not remark on a prosecution, a charge, or a lack thereof. She did what any mother would do. She thought Sweeney harmed her child. She thought it was a crime and called for help. At trial, counsel immediately met privately with the judge after the statement. Mr. Sweeney asked that he be allowed to testify that he was not charged with a crime under the doctrine of curative admissibility. The trial court, however, withheld judgment on this issue. Notably, the doctrine of curative admissibility is not a panacea. It is not permitted a party to introduce inadmissible evidence merely because the opponent brought out some evidence on the same subject. And that's exactly what happened here, some evidence on the same subject. Neither Bree nor any of her other witnesses referred to any prosecution, charge, or lack thereof. The investigators and police officers who have brought us her other witnesses, none of them mentioned any aspect of a charge or any sort of criminal background. Again, after plaintiff rested her case, but before the defense called any witnesses, Judge Cerny vacated Order in Limine No. 8 and allowed defendant to testify that he was not charged with a crime. This decision was made arbitrarily, especially considering the years and years of debate over the balance of evidence that was to be allowed in the courtroom. Plaintiff moved for a mistrial at this point. It was denied. Ultimately, plaintiff was left high and dry, unable to rebut defendant's case-in-chief, with her own case-in-chief severely curtailed. In sum, the trial court abuses discretion in reversing Order in Limine No. 8 and plaintiff's entitled to a new trial. Additionally, while Mr. Sweeney was allowed to present evidence that he was not charged with the crime, Brie was prevented from eliciting testimony about the results of the DCFS investigation. This report had an indicated finding that Sweeney had molested Brie. Generally, indicated DCFS reports are not admissible. However, some aspects can be admitted, and especially here, where the testimony of the investigators should have been admitted because Mr. Sweeney placed the veracity of Brie's allegations squarely at the center of the defense, and where Sweeney was allowed to testify that he was not charged. Mr. Sweeney's expert witness, Dr. Fink, questioned the credibility of Brie based not on his own personal interviews or observations, but on the interpretation of the DCFS report, the report that was not allowed into the courtroom. The jury and judge were permitted to hear Fink's credibility determination and the results of his review of the report, but not permitted to see the report or hear testimony in the content of the report. By unbalancing these two key evidentiary assumptions at the start of trial, the trial court abused its discretion and plaintiffs entitled to a new trial. This comes to the final and fourth evidentiary challenge here, the improperly admitted testimony of the defendant's expert witness, Dr. Fink. Fink based, as I mentioned previously, Fink based much of his testimony on the DCFS report, a report that was barred through orders of limine and could not be discussed by Brie's witnesses. As a result, plaintiff was unable to admit the report or fully question witnesses in order to rebut the testimony and properly test the foundation requirement of Fink's expert opinion. As a result, Fink failed to lay a proper foundation and should have been excluded. Second, Fink improperly opined on the credibility of plaintiff. As noted extensively in plaintiff's brief, Fink specifically testified as to plaintiff's credibility, including, as was read into the record, that he understood his job was to determine the credibility of the plaintiff. As this court well knows, the credibility of witnesses is for the trier of fact, not an expert. When the outcome of a trial depends entirely on the credibility of an accuser and a defendant, no error should be permitted to intervene. And as mentioned previously, Brie was unable to elicit testimony as to her own prior consistent statements to investigators, even though Fink's report deeply questioned her credibility. In sum, the trial court abuses discretion when it allowed the testimony of Dr. Fink without proper foundation and allowed Fink to make a credibility determination and where it prevented Brie from rebutting the evidence and testimony. As a result, Brie deserves a new trial. Brie brought three separate claims against Mr. Sweeney. The first two, battery and intentional infliction of emotional distress, were based in common law. The third was a statutory claim under the Illinois Gender Violence Act. Brie was entitled to a jury trial on this Illinois Gender Violence Act claim and was wrongfully denied this by the court. The Illinois Constitution guarantees the right to trial by jury for common law actions that exist when the Constitution was adopted. Indeed, battery has long been recognized in common law. Here, the Illinois Gender Violence Act is simply an extension of the intentional tort of battery, and she was entitled to a jury trial. Finally, defendants' counsel egregiously introduced inaccurate statements of law in his closing statement. He stated, and I quote from the record here, this is not just a fondling case, this is a penetration case. And that, quote, you don't need to have sexual experience to know how many fingers. He added, the touching or whatever didn't arouse. There's no evidence he did it for any sexual purpose. Defendants' counsel made these statements knowing that the case was a battery case. Counsel knew the jury would not receive instructions on penetration or desire. Thus, the statement could only mislead the jury on the burden of proof in the elements of Brie's claim, especially where she only needed proof in proper touching, not penetration or sexual desire. Defendant did not offer any evidence of his desire or lack of desire for a 13-year-old girl. No evidence was suggested throughout the trial that desire was or was not a factor in this case. Defendants' counsel's misleading and inaccurate closing statement was an egregious reversal error. Consequently, plaintiff requested his court reverse the verdict of the jury in the trial court and remand for a new trial. After 10 years, one mistrial, and a recent trial beset by error, Brie has yet to receive a fair hearing of her molestation at the hands of her stepfather. The trial court erroneously denied a routine motion that met all statutory requirements, and the trial court arbitrarily overturned years of evidentiary orders of limine among other issues that we addressed in our brief. For all these reasons, we ask that you overturn the decision of the trial court and remand so Brie may receive a fair hearing. Thank you. Are there any questions? No. Okay, thank you, Mr. Kwan. Thank you. Thank you. Mr. McClure? Thank you. Did I say that right? Good afternoon, everybody. Good afternoon. May it please the court and counsels, my name is Salvatore McClure, M-I-G-L-O-R-E, and I apologize for my voice. I'm recovering from a cold. I represent the defendant, Appley, in this particular case. Did you represent him at trial? I'm sorry, ma'am? Did you represent him at trial? Yes, trial, all the way through the case. It started in 2013. Okay. First of all, I know this court is very familiar with the facts, and you've read the briefs, and you've read, I'm sure you're familiar with the facts, the common law record, the law and the positions of the parties. So I'm not going to restate a lot of the obvious for sake of brevity and not to burden the court with anything further. There are seven issues that the appellant raises in this particular case. But I believe three control the outcome of the case. What I haven't heard satisfactorily, in my humble opinion, is why there was no post-trial motion filed on counts one and two, which went through a jury trial, which was assault and battery, quoting, and intentional infliction of emotional distress. We spent a myriad, a lot of time trying to put together discovery and other issues and other jury instructions, stating the law perfectly, French Malon. Judge French Malon spent a lot of time on that. Now, there was no objection to any jury instructions. There was no objection to anything else. But if you look at this case, the trial finished on a Friday, as the record indicates, before Martin Luther King holiday. There was no court on Friday. And there was no, excuse me, no court on Monday. So the judgment had to be entered on the following Tuesday. So we entered the Tuesday. Counsel in this particular case filed his notice of appeal prior to the judgment being entered on the verdict, which, of course, is only by hours. Now, the rules are clear, and I stated it in the brief, that if you file a notice of appeal before you file a post-trial motion, and a bench trial is deemed filed subsequent to the entry of the judgment. So that's not a problem. This court has, he's not required to file a post-trial motion on count three, the Gender Violence Act. That's a statutory cause of action. And, of course, jury is not allowed in that particular case, of which counsel for the appellant argued. We argued in front of basically four judges on motions that eliminate and motions for reconsideration. It's a well-settled law that is a statutory cause of action. And unless the Illinois legislature provided for a jury, it's not a common law action or an action that basically existed at common law. And you're not entitled to a jury on that particular case. Now, as far as the post-trial motion in this particular case, I think it's crystal clear that a post-trial motion has to be filed in order to preserve the issues for appeal. And it wasn't done. They don't have to be filed in civil cases. Pardon me? They don't have to be filed in civil cases. I differ because the rules say they have to be filed, and I cite them. 366 I and double I, and the Civil Practice Act in 1202 requires it and sets it all out. And I cited the case law, the Shett case and the Crumb v. Dietrich case indicate in a civil case that goes to a jury, they have to be filed to preserve the issues. And in a bench file, they don't have to. Now, the rules themselves, the rules in the Supreme Court rules and the Civil Practice Act go to great lengths to differentiate between a non-jury case and a jury case. It is crystal clear, with all due respect, Justice McDade, that a post-trial motion had to be filed in this particular case to preserve those issues. Now, my position is, with all due respect, the issues with respect to Council 1 and 2 are forfeited or waived. However, forfeiture and waiver is basically a limitation on the parties, not a limitation on a court's jurisdiction. This court sees fit that it wants to decide that those two issues without a post-trial motion, based upon a public policy exception or some other exception, you're free to do so. However, I believe if you look at the brief, my brief, and the authorities cited therein, statutory authorities, 1202, Supreme Court Rule 366, the Arndt-Shett case and the Crumb case, it's crystal clear what has to be done. Very few exceptions, except in the Crumb case, indicates no post-trial motion need be filed, of course, in a bench trial. There are two exceptions in a jury case. One is, if the jury fails to reach a verdict, then no post-trial motion is required because the judge decided it's a question of law. Or, there's a directed verdict, then it was never submitted to the jury, then no post-trial motion. Those are the only two exceptions. No post-trial motion doesn't have to be filed. So I have to respectfully assert that those issues are forfeited at this point in time. I think that issue possibly controls the outcome of this case, but for count three, which is a bench trial. Bench trials were cases tried simultaneously with the jury trial. The same evidence was presented. In fact, a significant element of the Gender Violence Act as pled was a battery, a common law battery. It was an essential element and identical to the stand-alone count in count one. So, basically, he's complaining of a jury trial. He got his jury trial as a count one with battery. There was no battery found by the jury at that point in time. However, if this court wishes to address the issues in the GVM, excuse me, Gender Violence Act, GVA, it may do so because of a bench trial, of course. Now, as far as the SOJ goes, excuse me, substitution of the judge as a matter of right, I think the case law in this particular case gives many exceptions to 2-1002. Now, the testing of waters doctrine has been abolished under the Palos Community Hospital case that was cited by both parties. However, that case was limited to testing the waters. It was not limited to any other reason. In fact, the Supreme Court in 2021 goes on to state that the reason why they were reversing was because the trial court basically relied on solely testing the waters doctrine and there's nothing in the statute that says testing the waters doctrine is an exception to a denial. However, the court goes on to state that a trial court has a fundamental right to control its own docket to make sure there's no abuse of the judicial process or any maneuvering and to make sure that the motion was filed for a proper purpose. It compares the Illinois Constitution where a court gets its jurisdiction as a court of general jurisdiction to a statutory claim under the substitution of judge. The jurisdiction of the court stems from the Constitution, not from the statute. So my position would be that there are other ways to deny a substitution of judge as a matter of right in this particular case. If you look at the record, in this particular case, Judge Sonny was very well familiar with the history of this case. He stated on the record it was a tortured past. This particular case originated with acts supposedly happening in 2007 and 2008. It wasn't filed until 2013. Subsequent to 2013, it was set for trial a number of times. We went through five judges. We finally get to Judge French Mallon, who basically did all the heavy lifting on this case for the rest of the judges. And we spent a lot of time with our counsel and myself. And the bottom line is we filed several motions ad limine on this case. Now, a motion ad limine is an interlocutory order, basically an anticipation of what the evidence might be at trial. The court doesn't have the full benefit of what the evidence will be at trial. So as far as this particular case, what we were concerned about, and I argued several times below, was this case was being tried in 2023, okay, for actions that supposedly happened in 2008, filed in 2013. A reasonable juror is going to conclude that there was some criminal prosecution here and the defendant was punished. There was prejudice on the part of the defendant, prejudice to the defendant on the part. Now, every judge ruled that basically motion ad limine number eight, nothing was supposed to be stated with respect to criminal prosecution or arrest. However, in the first trial, there was a mistrial. Mistrial was caused by two things. One, my misinterpretation of Judge French's order, and Judge French recited in my brief basically stating that her order was not clear on the record. Counselor filed this petition for a rule or whatever, but Judge French basically stated that it wasn't clear the way we drafted the order, that I thought that we could have mentioned what I mentioned, not that he was convicted, just that he was arrested at that point in time. I was wrong. Now, before that, the record will show that there were three motions for mistrial made by the defense for the plaintiff. The fourth one was because of a motion of which counsel can't control from his client or the client's mother or the client's husband in front of the jury, but Judge French admonished him about it. It has to stop or she's going to declare a mistrial. I made the last motion for a mistrial. Counsel agreed. Counsel, how is that relevant to this proceeding? I'm only bringing it up because counsel brought it up. The four mistrials you brought up? No, no, one mistrial. No, I understand. The four motions you said that were made, three by you for the mistrials? That's right. I'm only saying that there was grounds for mistrials back then because he brought up the mistrial. And it's basically gone over. So what I'm getting at is that this case had a history. Now, there was a mistrial declared. Other trials were set. Counsel came in, I believe, a number of times that we put in our motion asking for continuances for whatever the reasons are. They're on the record there. We don't need to go through that. Judge Surry looked at that, and as far as the motion for SOJ is what we're talking about, is the court has to look at the entire history of the case. It cannot take a motion for SOJ in a vacuum or in isolation or limit a court's jurisdiction or power to act in a limited and continuous, excuse me, manage its own docket, make sure there's no abuse of gamesmanship by the parties on the motion for SOJ. It has to be brought at the earliest possible time. Counsel, how much after the assignment of Judge Cernia was this motion made? I'm sorry? How much time after Judge Cernia was assigned to this case was this motion made? Well, about seven or eight months. Seven or eight months? Yes, it's in there. Judge Cernia was assigned to the brief that Judge Chapman indicated when counsel basically entered an orderly re-impact agreement, not only dismissing his case without prejudice, that I would agree if he went to vacate it within 30 days, and we both asked Judge Chapman if he would keep the case because he was familiar with it. We had gone through so many judges. However, Judge Chapman said it's not going to be me because in June, Judge Cernia's coming in here as an absolute certainty, and it's on the record. He wasn't assigned to the case. He was just saying that it was his knowledge that it would be judged. Is it Cernia? Yes, Cernia, Judge Neil Cernia. However, he was assigned to the case in June of 2023. He was in that courtroom. It's public knowledge. It's on the website. I think you mean June of 2022, do you not, Mr. McLaughlin? I'm sorry, Judge, 2022. Thank you. He was assigned to that particular courtroom. Now, we had put in the order, me, counsel, and I, that if subject to the chief judge's approval, we asked that Judge Chapman keep the case. Nobody ever moved that Judge Chapman keep the case. The case was set for pretrial after the contingencies on December 20th. We appeared via Zoom, and basically Judge Cernia said this case is going to trial. Was that the first time that the parties had been before Judge Cernia, December 20th of 22? My recollection is yes. Okay, thank you. At Judge 2020, and he asked us if we were going to be ready for trial. We asked him, me and counsel and I, because his client lives out of state, and I had an expert witness that charged us for his time, and my client had difficulty getting time off work, if we are going to go. He basically said, you're the only trial. I'm 99%. Unless somebody dies, you're going. That was at 9 o'clock in the morning. 2 o'clock that afternoon, counsel for the appellant files a motion for SOJ as a matter of right. Now, that was on December 20th. Next time we appeared before Judge Cernia was January 5th. Now, I understand it was a holiday, but if it was that important to counsel, I think between May or June, he could have checked that out in 2022, as to who had the case and moved that Judge Chapman or another judge keep the case, and I think he's charged with constructive notice and possibly actual notice based on the fact that the judge assignments were published. Any lawyer has a duty to file his own case. You just said that he filed the motion in September. He filed the motion on December 5th after the pre-trial. Excuse me, after the status case. That day. That day at 2 o'clock, then we got it at 9 o'clock. December 20th or December 5th? December 5th. And then you said the next time you appeared was January 5th? I apologize.  Let me clarify it for the record. We appear in January, excuse me, December 20th, 2022 for status. Judge Cernia assured us that we're going to trial if somebody dies. Then pre-trial was January 5th, 2023. Counsel motioned up his motion at the same time as the pre-trial on January 5th, 2023. Judge Cernia went through basically the history of the case and basically said, I'm not going to grant it. I think it's for a delay. You have the rest. It's in the record. Counsel filed the Supreme Court Rule 383 in the interim. He filed a few other motions indicating he wanted a reconsideration. The 383 was denied. That's not adjudication of merits. Mr. McGlory, on January 5th, was counsel for movement allowed to argue the motion for substitution as a matter of right? Yes. And was counsel for plaintiff present when the court made the initial statement that it was not going to grant it? Yes.  Absolutely. The record bears that out, Judge. Okay. The last thing I want to say is I'm not going to address Motion to Eliminate 8 because I don't have enough time unless you have some questions. But I think curative admissibility is the key there. And there was not just a little evidence on curative admissibility. There were three police officers in uniform brought in. They were mentored in their testimony by Judge French-Mallon. There was a DCFS investigator. Those are hearsay reports that are not admissible as far as that goes. And nobody with first-hand knowledge is going to testify. And there was a psychiatrist, a psychologist, a therapist that was there to testify with respect to she only treats people who are sexually abused. That was all brought up, okay, by plaintiff's counsel. That definitely leaves the impression to a normal juror that something happened here that was criminal. The record itself speaks for itself. In order to level the playing field, Judge Stoney exercised his discretion and limited curative admissibility to the defendant testifying—not testifying. He just stated—well, he did testify—that he was not arrested or convicted. He instructed the jury that that was for informational purposes only and that—or not to consider that a liability. There's no evidence that they did consider it a liability or did prejudice the jury. In this particular case, I believe Judge Stoney was extremely cautious and waited until the state—excuse me, the plaintiff put on their entire case before he ruled on whether or not he was going to allow me to bring up the fact that there was no criminal proceedings. Any other questions for Mr. McElroy? Thank you, and I apologize for confusing the dates. There are just a lot of dates here. Thank you very much. Mr. Kwan, rebuttal. Good afternoon again, Your Honors. First, I'd just like to correct the record and the timeline just to make sure that we're clear as far as the timeline here. On December 6th, we filed our motion for status and for assignment of judge. We received an automated notice from the court at this point that did not list the judge's name. It listed the courtroom, but did not list the judge's name. On December 12th, we received another notice. This notice corrected the trial date. Again, no judge's name. The first time we sat in front of Judge Cerny was this status hearing on December 20th. We filed our motion for substitution of judge as of right that afternoon. For whatever reason, the court assigned that to be heard all the way out to January 5th. We would have been glad to have that much earlier. Did you have the option to set it? No, we did not, Your Honor. The date was assigned by the court clerk. That is the timeline that we were under. It was heard on January 5th. We brought it immediately before Judge Cerny ruled on any other issues in the pretrial. We brought our motion to reconsider. That was held the morning of January 9th before the jury was brought in. That is the timeline that we have there. Do you have any questions about the timeline? No, thank you. Then I thank you all for your time and have a wonderful afternoon. Thank you. We thank both of you. Thank you, Your Honor. We thank both of you for your arguments this afternoon. We will take the matter under advisement and will issue a written decision as quickly as possible.